*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2012-241

NOVEMBER TERM, 2012

| | |
|---|---|
| In re J.L., Juvenile | } APPEALED FROM: |
| | } |
| | } Superior Court, Chittenden Unit, |
| | } Family Division |
| | } |
| | } DOCKET NO. 245-8-09 Cnjv |

Trial Judge: A. Gregory Rainville

In the above-entitled cause, the Clerk will enter:

Father appeals from a judgment of the superior court, family division, terminating his parental rights to the minor J.L. He contends the trial court abused its discretion by issuing an order that does not comport with its stated objectives. We affirm.

The material facts as found by the trial court may be summarized as follows. Father and mother met while both were incarcerated in New York. They later lived together briefly in a hotel in the Albany, New York area. When mother became pregnant and father observed her using heroin, he put her on a bus to Vermont where she had family. Mother later falsely informed him that she had terminated the pregnancy. Mother gave birth to a son, J.L., in September of 2004.

J.L.'s life over the next five years with mother was marked by unremitting abuse and neglect. He was exposed to mother's substance abuse and criminal activity, and was physically and sexually abused by a series of dangerous caregivers. He came into DCF custody in August 2009, and, after a number of unsuccessful placements, was placed in the foster home of an experienced child care provider, where he has since remained.

J.L. was adjudicated CHINS in October 2009, and DCF filed a termination petition in May 2010. Mother voluntarily relinquished her parent rights in August 2010. Mother identified father as J.L.'s biological father, and a DCF search found an address for him in Oneonta, New York, and an associated phone number listed to one Shirley Walker. A letter sent to the address in August 2010, informing father of his possible paternity went unanswered. Phone messages in October 2010 were unreturned. In April 2011, a DCF social worker reached Ms. Walker, who identified herself as father's grandmother; she indicated that he was incarcerated in Elmira, New York. The State sent a certified letter to father's prison address in April 2011, with a stamped envelope returnable to the Vermont Attorney General's office, but father did not respond.

The State filed a motion for genetic testing in May 2011. Father finally appeared by telephone at a hearing in June 2011, where he agreed to participate in testing. Shortly thereafter, father sent a letter to DCF indicating that he had not responded to the April 2011 letter because it had taken months to consult with his lawyer about how best to respond to the paternity allegation. The trial court found that father's assertion in this regard lacked credibility, and that he knew well before the April 2011 letter that the State of Vermont was seeking to speak with him about his putative paternity of J.L. Testing confirmed appellant as J.L.'s father. The court issued a paternity order and assigned counsel for father.

The Department then moved to terminate the residual parental rights of father to J.L. Testimony at the hearing from J.L.'s therapist and social worker established that his early deprivations and abuse had resulted in post-traumatic stress disorder (PTSD), severe reactive attachment disorder (RAD), and attention deficit hyperactivity disorder. The boy also exhibits sexualized behaviors. As a result, J.L. requires constant reassurance, predictability, and constancy to address his reactive behaviors. He was receiving the care that he required in his current foster home and was showing gradual improvement. A change of custody, however, would be extremely traumatizing and detrimental to the child's well being.

In its best interests analysis, the court found that father had no relationship with J.L, no understanding of his significant therapeutic needs, and no plan or ability to address them when released from prison. At the time of the hearing, father was serving a 30 month sentence for felony possession of cocaine. He was scheduled to be paroled to the community in August of 2012. Although father claimed that he had been unfairly denied an early opportunity to parent J.L., the court found that father had failed to grasp the opportunity to do so when he knew that mother was pregnant, sending her back to Vermont. Furthermore, when he later learned of the child, he failed to promptly make every effort to re-assert his interest. At the same time, the court found that the child was well settled in his current home, school, and community, and that any change would be devastating to his emotional well being. The court thus concluded that father could not resume parental responsibilities within a reasonable period of time, and that termination was in the best interests of the child. This appeal followed.

Father has not challenged any of the trial court's findings summarized above. Instead, he claims that the court's "order does not comport with [its] stated objectives" because it found that continuity and stability were critical to J.L.'s best interests yet failed to transfer parental rights directly to his current foster parents. It is unclear how the claim impacts father's interests or undermines the court's finding that he was unfit. Nevertheless, it is well settled that the nature or availability of alternative placements are irrelevant considerations in determining whether the natural parents are capable of resuming their parental duties within a reasonable period of time. In re E.B., 158 Vt. 8, 15 (1992). Accordingly, we find no merit to the claim.

Father also suggests that termination was inconsistent with the finding that J.L. could benefit from a relationship with father in the future. Although the court found that termination was in J.L.'s best interests, indeed that it was essential for his emotional health that he remain unaware of father at this time, it acknowledged that J.L. "may someday need to know about his biological father." That time, however, was "not now, nor is it likely to be in the foreseeable

future."  In determining whether a parent may resume parental responsibilities, we have stressed that a "reasonable period of time" must be measured from the child's perspective and needs.  In re B.M., 165 Vt. 331, 336 (1996).  The evidence and findings here amply support the court's conclusion that, in view of the J.L.'s paramount need for permanence and stability, and the absence of any relationship with father, there was no possibility that father could resume parental responsibilities within a reasonable time.  We, thus, discern no merit to father's claim, and no basis to disturb the judgment.

Affirmed.

BY THE COURT:

_____
John A. Dooley, Associate Justice

_____
Marilyn S. Skoglund, Associate Justice

_____
Brian L. Burgess, Associate Justice